RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

CHARLES J. BUTLER
MATTHEW P. UHALDE
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C.  20044
Telephone:   202-514-6062
Facsimile:   202-307-0054
Email:   Charles.J.Butler@usdoj.gov

MICHAEL BAILEY
United States Attorney
*Of Counsel*

*Attorneys for United States*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **United States of America,** | Case No. |
| **Plaintiff,** | |
| v. | **COMPLAINT** |
| **Michael L. Quiel,** | |
| **Defendant.** | |

Plaintiff United States of America alleges as follows:

1. The United States brings this action to reduce to judgment civil penalty assessments against Michael L. Quiel, pursuant to 31 U.S.C. § 5321(a)(5).  These penalties, commonly known as "FBAR penalties," arise from Quiel's failure to timely report his financial interest in, or signatory authority over, foreign bank accounts for the

1

2007 and 2008 calendar years, as required under 31 U.S.C. § 5314 and related regulations.

2. The IRS Chief Counsel, a delegate of the Secretary of the Treasury, has authorized this action, which the United States brings at the direction of the Attorney General's delegate, pursuant to 31 U.S.C. § 3711(g)(4)(C).

**Jurisdiction and Venue**

3. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 1355.

4. Venue properly lies in the District of Arizona under 28 U.S.C. §§ 1391(b)(1) and 1395(a).

**The Defendant**

5. Defendant Michael Quiel resides in Scottsdale, Arizona. During the years at issue here, Quiel was a resident of the United States.

6. From 1987 through 2001, Quiel owned and operated two securities brokerage firms. Since 2001, he has worked as an investment banker and venture capitalist, investing in start-up and early stage companies. Quiel and his business partner Stephen Kerr, for instance, ran a hedge fund business that helped private companies raise capital and go public. In exchange, the two received consulting fees and shares of stock in the newly public companies.

7. In 2006, Quiel and Kerr sought to expand their business overseas through establishing foreign holding companies and foreign bank accounts.

**Foreign Bank or Financial Account Reporting Requirements**

8. Federal law requires every resident or citizen of the United States who has a financial interest in, or signatory or other authority over, a bank, securities, or other financial account in a foreign country to report that relationship to the Department of Treasury for each year in which the relationship exists. *See* 31 U.S.C. § 5314(a); 31 C.F.R. § 1010.350(a).

9.  To fulfill this requirement, such a U.S. resident or citizen must file with the IRS a "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR." To report information for all years through 2012, the proper FBAR form was Form TD F 90-22.1.

10. For each of the calendar years at issue in this action, an FBAR was due no later than June 30 of the subsequent calendar year for any year in which the aggregate balance of the foreign financial accounts exceeded $10,000. *See* 31 C.F.R. § 1010.306(c).

11. Any United States resident or citizen who fails to comply with the FBAR reporting requirements may be subject to a civil penalty. For violations involving the willful failure to report an interest in a foreign account, the maximum civil penalty the Department of Treasury may impose for each violation is the greater of $100,000 or 50% of the balance in the account at the time of the violation. *See* 31 U.S.C. § 5321(a)(5)(C).

12. This FBAR penalty is subject to interest and additional penalties under 31 U.S.C. § 3717.

**Quiel's Willful Violations of FBAR Reporting Requirements**

13. In 2006, Quiel and Kerr engaged Christopher Rusch, a California lawyer, to help them expand their hedge fund business overseas and, in the process, limit their U.S. federal tax liabilities. Rusch recommended establishing for each a Swiss investment entity to hold and defer earnings from U.S. tax. The proposed entity would raise venture capital funds from foreign investors and invest those funds in the U.S.-based companies to which Quiel and Kerr provided services. In addition, it would use nominee entities and nominee directors to obscure Quiel's and Kerr's ownership interests.

14. Rusch advised Quiel that, even with the use of nominees, Quiel would need to report income from the Swiss entity on his U.S. tax returns. Rusch also advised Quiel that if Quiel had signing authority or control over a foreign bank account, he would have FBAR reporting obligations in the U.S.

15. On September 18, 2006, Rusch sent Quiel an agreement to establish a Swiss venture capital entity with a St. Kitts and Nevis subsidiary. The agreement was in the name of Lynn-Cole, a U.S. company that Quiel owned. The following day, Quiel returned the executed agreement and indicated he was wiring the required funds to Rusch. Later, in December of 2006, Quiel forwarded to Rusch shares of two U.S. corporations, Intelligentias and ECOtality, worth approximately $2.6 million, for deposit with the new venture capital entity.

16. On October 27, 2006, Rusch provided Quiel a list of Swiss individuals who could serve in various positions for the entity, including corporate manager, director/board member, and fund manager.

17. On Quiel's behalf, Rusch then formed nominee Swiss and St. Kitts and Nevis entities and opened bank accounts under the nominees' names at Swiss banks UBS AG and Pictet & Cie.

18. In October 2006, an account was opened at UBS, with account number ending in 9732, in the name of Legacy Asset Management, AG. The account identified Daniel Noser, a Swiss citizen, as director of Legacy Asset Management. Quiel was the account's beneficial owner.

19. In January 2007, a second account was opened at UBS, with account number ending in 1090, again in the name of Legacy Asset Management, AG. It again identified Daniel Noser as director of Legacy Asset Management. It also named Noser and Rusch as authorized signers. Quiel was the account's beneficial owner.

20. Also in January 2007, an account was opened at Pictet & Cie, with account number ending in 5153, in the name of Legacy Asset Management, AG. The account identified Daniel Noser as director of Legacy Asset Management, and named Noser as an authorized signer and Rusch as power of attorney. Quiel was the account's beneficial owner.

21. In June 2007, another account was opened at UBS, with account number ending 2363, in the name of Swiss International Trust Co., AG. The account named

Alma E. Suter-Lucioli, a Swiss citizen, as director of Swiss International Trust. It identified Suter-Lucioli and Rusch as authorized signers. Quiel was the account's beneficial owner.

22. During 2007, the aggregate balance of each of the foreign accounts described in paragraphs 18 through 21 exceeded $10,000 in U.S. currency. During 2008, the aggregate balance of the Pictet & Cie account and the UBS accounts ending in 1090 and 2363 exceeded $10,000 in U.S. currency.

23. Quiel failed to report his interests in these accounts on his U.S. income tax returns and on FBARs filed with the IRS.

24. CPA Michal Stuck prepared Quiel's tax returns for these years. In doing so, Stuck relied on information that Quiel and his bookkeeper provided. With respect to both 2007 and 2008, Quiel informed Stuck that he had signature authority over a foreign bank account in Belize. Quiel, however, did not inform Stuck of his interests in the UBS and Pictet & Cie accounts. Quiel's tax returns for 2007 and 2008, which Quiel signed, disclosed his interest in the Belize account, but did not disclose his interests in the Swiss accounts.

25. Likewise, Stuck prepared Quiel's FBARs for 2007 and 2008. The FBARs disclosed Quiel's interest in the Belize account. The FBARs, which Quiel signed, did not disclose his interests in the UBS and Pictet & Cie accounts.

26. Quiel had actual or constructive knowledge of his obligation to file FBARs reporting his interests in the UBS and Pictet & Cie accounts for 2007 and 2008, given that, among other considerations, he filed FBARs reporting his interest in a Belize account for both of those years. Quiel intentionally failed to disclose his interests in the Swiss accounts.

27. Each instance of Quiel's failure to report his interest in each of the UBS and Pictet & Cie accounts, in a year for which he was required to file an FBAR, constitutes a separate willful violation of the FBAR filing requirements.

**Quiel's Related Criminal Conviction**

28. In addition, with respect to the 2007 and 2008 tax years, a federal grand jury in the District of Arizona returned indictments against Quiel, his business partner Kerr, and their attorney Rusch on a variety of crimes concerning the failure to pay taxes on income in foreign accounts and failure to report foreign accounts. *See United States v. Stephen M. Kerr*, 2:11-cr-2385-JAT.

29. During a month-long trial in March 2012, Rusch testified that he illegally structured Swiss businesses controlled by Quiel and Kerr. Rusch additionally testified that he helped Quiel and Kerr conceal money in Switzerland and helped them repatriate that money to the United States.

30. On April 11, 2013, a jury convicted Quiel of willful subscription to false individual income tax returns for the 2007 and 2008 years. On December 19, 2014, the the Ninth Circuit affirmed Quiel's conviction. *See United States v. Quiel*, 595 Fed. Appx. 692 (9th Cir. 2014).

**CLAIM FOR RELIEF: REDUCE PENALTIES TO JUDGMENT**

31. The United States incorporates by reference the allegations in Paragraphs 1 through 30.

32. By June 30, 2008, Quiel was required to file an FBAR reporting his interests in his Swiss accounts for 2007. By June 30, 2009, he was required to file an FBAR reporting his interest in his Swiss accounts for 2008.

33. Under 31 U.S.C. § 5321(b), therefore, the time for the IRS to assess FBAR penalties for these years would have expired, respectively, on June 30, 2014, and June 30, 2015.

34. On May 19, 2014; October 10, 2014; February 16, 2016; February 2, 2017; February 6, 2017; and October 10, 2018, Quiel executed consents to extend the statute of limitations for assessment of these FBAR penalties, ultimately extending the limitations period for both years until December 31, 2019.

35. On January 29, 2019, the IRS timely assessed against Quiel civil penalties for willful FBAR violations in the following amounts for the following years:

| Year | FBAR penalty |
|------|--------------|
| 2007 | $1,374,449 |
| 2008 | $736,355 |

36. For each year, the FBAR penalty is 50% of the highest aggregate balance in Quiel's Swiss accounts, computed based on the information available to the IRS.

37. The IRS made the assessments stated in Paragraph 35 pursuant to 31 U.S.C. § 5321(a)(5)(C), which imposes a penalty not to exceed the greater of $100,000 or 50% of the balance in the account at the time of the violation for each willful violation of the FBAR filing requirements in 31 U.S.C. § 5314.

38. On February 13, 2019, the IRS provided Quiel notice, and demanded payment, of the FBAR penalties for 2007 and 2008.

39. Despite receiving notice and demand for payment, Quiel has not paid the outstanding FBAR penalties described in Paragraph 35.

40. Pursuant to 31 U.S.C. § 3717(a)(1), the United States is entitled to recover prejudgment interest that has accrued on Quiel's unpaid FBAR penalties.

41. Pursuant to 31 U.S.C. § 3717(e)(2), the United States is entitled to recover a penalty for Quiel's failure to pay a lawful debt owed the United States.

42. Pursuant to 31 U.S.C. § 3717(e)(1), the United States is entitled to recover the cost of processing and handling Quiel's unpaid FBAR penalties.

43. Quiel is thus liable to the United States for $2,110,804 in willful FBAR penalties for 2007 and 2008, plus $90,273 in interest, failure to pay penalties, and costs of collection, pursuant to 31 U.S.C. § 3717, as of September 9, 2019.

44. The United States is entitled to recover $2,201,077, as of September 9, 2019, plus interest, penalties, and costs accruing from that date.

WHEREFORE, the United States respectfully requests that the Court:

A. Enter judgment in favor of the United States and against Defendant Michael L. Quiel in the amount of $2,201,077, as of September 9, 2019, plus interest, penalties, and costs accruing from that date; and

B. Award the United States its costs in this action and any other relief the Court finds appropriate.

Dated: January 19, 2021

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Charles J. Butler*
CHARLES J. BUTLER
MATTHEW P. UHALDE
Trial Attorneys, Tax Division
U.S. Department of Justice

Of Counsel:
MICHAEL BAILEY
United States Attorney

*Attorneys for the United States of America*