**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>          Plaintiff,<br><br>v.<br><br>Michael L. Quiel,<br><br>          Defendant. | No. CV-21-00094-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the United States of America's ("Plaintiff") Renewed Motion for Judgment as a Matter of Law or, in the alternative, Request for New Trial (Doc. 140) and Motion to Review Clerk's Taxation of Costs (Doc. 145). For the following reasons, the Court denies Plaintiff's Renewed Motion for Judgment as a Matter of Law or, in the alternative, Request for New Trial (Doc. 140) and grants Plaintiff's Motion to Review Clerk's Taxation of Costs (Doc. 145).

**BACKGROUND**

The facts of this matter are set forth in the Court's prior orders and are well known to the parties. (*See* Doc. 64.) The Court, thus, discusses only those facts pertinent to the pending motions. The uncontested evidence shows that: (1) Quiel provided the names of the account holders listed on the Swiss accounts at issue, (2) Quiel sent Rusch personal identifying information that is needed to make an investment in Switzerland, (3) Quiel traveled to Switzerland to meet individuals Rusch scheduled for him to meet, (4) the people

Quiel met in Switzerland were later listed Swiss bank account documents along with Quiel, and (5) Quiel sought updates on the stock's performance in the Swiss accounts.

Nevertheless, there is no evidence connecting Quiel to cash wires necessary to open the four Swiss accounts at issue. Quiel testified that he never sent Rusch any cash to begin a Swiss venture or open Swiss bank accounts, (Doc. 137 at 64, 74, 82, 140, and 141; Trial Transcript ("TT") TT 547:5–19, 557:7–25, 565:12–19, 623:20–624:2, 624:10–25), and believes he contributed stock to invest in Rusch's Swiss fund, not his own corporate accounts, (*Id.* at 78 and 141; TT at 561:1–5, 624:22–625:2). Although not denied, Quiel did not admit that his investment/stock was deposited in the three UBS accounts and one Pictet account before the Court. The jury was not presented with testimony identifying in which accounts Quiel placed his stock.

Furthermore, representatives from UBS and Pictet stated that the external asset manager or financial intermediary listed Quiel as the ultimate beneficial owner, and the banks relied on the external asset manager or financial intermediary's identification of Quiel. Merely because Quiel was listed on the ultimate beneficial owner of the account does not mean that he was so. (Doc. 136 at 32, 35, 58-60 and 91-92; TT 263:9–13, 266:5–8, 289:25–291:16, 322:21–323:2.) Neither Pierre Gabris, Daniel Noser, nor Arno Arndt testified at trial. Quiel affirmatively denied that he was the beneficial owner of those accounts. (Doc. 137 at 158; TT 641:4–10, 16–22.) Testimony was admitted at trial upon which a reasonable jury could have rejected some or all of Rusch's testimony.

A jury verdict (Doc. 128) and judgment (Doc. 129) was entered in favor of Defendant Michael Quiel on January 12, 2024. Defendant filed a Bill of Costs (Doc. 132) seeking $5,104.61 on January 23, 2024. Plaintiff did not file an objection. (Doc. 139 at 1.) The Clerk of Court assessed costs in favor of Defendant and against Plaintiff in the amount of $4,488.90 on February 9, 2024. (Doc. 139 at 2.) The same day, Plaintiff filed a Renewed Motion for Judgment as a Matter of Law or, in the alternative, Request for New Trial (Doc. 140). Plaintiff then filed a Motion to Review Clerk's Taxation of Costs (Doc. 145) on February 16, 2024.

**DISCUSSION**

I. **Legal Standard**

    A. **Renewed Motion for Judgment as a Matter of Law**

A party may move for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) before a case is submitted to the jury. A Rule 50(a) motion for judgment as a matter of law must "specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2).

A party may renew a motion for judgment as a matter of law under Rule 50(b) no later than 28 days after the entry of judgment in a jury trial. Fed. R. Civ. P. 50(b). A "party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1016 (9th Cir. 2018) (quoting *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)).

The test on a Rule 50(b) motion is whether "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury." *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 604 (9th Cir. 2016) (quoting *White v. Ford Motor Co.*, 312 F.3d 998, 1010 (9th Cir. 2002), amended on denial of reh'g, 335 F.3d 833 (9th Cir. 2003)). In considering a Rule 50(b) motion, the court "must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018) (alternation in original) (quoting *Ostad v. Or. Health Scis. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003)). In ruling on a Rule 50(b) motion, the court may (1) allow judgment on the verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law. Fed. R. Civ. P. 50(b).

    B. **Request for a New Trial**

The court may grant a new trial only if the verdict is contrary to the clear weight of the evidence or "it is quite clear that the jury has reached a seriously erroneous result." *Venegas v. Wagner*, 831 F.2d 1514, 1519 (9th Cir. 1987). On a Rule 59 motion, "the

district court can weigh the evidence, make credibility determinations, and grant a new trial for any reason necessary to prevent a miscarriage of justice." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 841 (9th Cir. 2014). "Unlike with a Rule 50 determination, the district court, in considering a Rule 59 motion for a new trial, is not required to view the trial evidence in the light most favorable to the verdict." *Id.*

**II.  Analysis**

**A.  Renewed Motion for Judgment as a Matter of Law**

During trial, Plaintiff orally moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). (Doc. 137 at 172; TT 655:2–4.) Plaintiff based its motion on the following grounds: (1) Defendant admitted that he owned the stock in the Swiss accounts, (2) the "account records identify [Defendant] as the beneficial owner," and (3) [a]ll of the accounts were in the name of an entity that was acting on [Defendant's] behalf with respect to the assets in the account . . . ," and (4) Defendant exercised other authority over the accounts. (*Id.* at 172, 174, 191; TT 655:5–16, 657:3–5, 674:11–14.) Thus, according to Plaintiff, evidence established that Defendant had a financial interest in all four Swiss accounts. (*Id.* at 172; TT 655:5–6.)

It is not contested that Quiel held valuable stocks in the Swiss accounts, and at least some of the accounts themselves listed Quiel as the beneficial owner. Nevertheless, the Court denied the motion. (Doc. 119; Doc. 137 at 190-192; TT 673:21–675:1.) It did so because "whether or not the corporations were acting as a nominee of Quiel or whether they were off on some sort of tear from Rusch remained an issue of fact." (Doc. 137 at 190-191; TT 673:21–674:2.) Alternatively, whether Quiel could exercise power over an account by communication directly with the bank, "either directly or through an agent, nominee, attorney or some other capacity on behalf of" Quiel also remained an issue of fact. *See* (Doc. 140-19 at 8; Doc. 137 at 173-175; TT 656:22–658:20.) Likewise, whether Defendant exercised other authority remained a disputed issue of fact. (Doc. 137 at 191; TT 674:11–25.)

Now, in Plaintiff's Rule 50(b) renewed motion for judgment as a matter of law,

- 4 -

Plaintiff argues that the trial evidence shows (1) Defendant had a financial interest in the Swiss accounts and (2) willfully failed to record his financial interest on the Report of Foreign Bank and Financial Accounts ("FBAR"). (Doc. 140 at 3–12.) Again, Plaintiff relies on the "nominee" or "in some other capacity" standard. (Doc. 140 at 3.)

Without any new argument or changed circumstances, the Court's reasoning for denying Plaintiff's Rule 50(a) motion remains the same. There remains a basis in the evidence upon which a reasonable jury could find that Rusch did not set up the accounts for Quiel and merely falsely identified Quiel as the nominal owner. As such, Plaintiff Rule 50(b) motion is denied. And because the Court finds that a reasonable basis existed for the jury to conclude that Defendant did not have a financial interest in a foreign financial account in Switzerland during 2007 and 2008, the Court does not address Plaintiff's willfulness argument.

### B. Request for a New Trial

Plaintiff requests the Court to grant a new trial because (1) "under the doctrine of collateral estoppel, or issue preclusion, Quiel's prior conviction for willfully filing false tax returns establishes . . . that Quiel had a financial interest in at least one of the accounts at issue; (2) Swiss account holders were Defendant's nominees or acted in some other capacity on behalf of Quiel; and (3) "the evidence at trial [] made clear that Quiel had [other] authority over the Swiss accounts. (Doc. 140 at 3, 12–14.)

First, the Court previously ruled on Plaintiff's collateral estoppel and issue preclusion argument finding that Defendant's conviction does not preclude Quiel from denying he had a financial interest in any one or more of the several Swiss accounts. *See* (Doc. 64 at 7–10.) Thus, the Court's analysis in the order denying summary judgment remains the same. For the evidence to clearly weigh in favor of the Plaintiff, the Plaintiff would have to establish evidence that establishes a prima facie case against the Defendant. Plaintiff did not introduce sufficient evidence showing the specific amounts of Quiel stock in the various Swiss accounts, nor did it establish which one or more, if any of the accounts, over which Quiel had control.

Second, the clear weight of the evidence does not show that Quiel had a financial interest in, or other authority over, the Swiss accounts. While there is uncontested evidence that leans in favor of Plaintiff's theory, the jury was also presented evidence that supports Defendant's testimony that he (1) made an investment in Rusch's investment accounts and (2) does not have a financial interest in UBS accounts ending in -9732, -1090, or -2363, nor the Pictet account ending in -2625.

1. On October 2, 2006, Rusch emailed Quiel a reminder regarding Rusch's "current intentions and Switzerland" and desire to use a "bank and management company . . . [that] require[s] a minimum account balance of $500,000 . . . per account." Rusch also stated if it was unacceptable "to keep this amount of money in the Swiss bank . . . , I have "other sources." (Tr. Ex. 34.) Quiel did not send Rusch $500,000. (Doc. 137 at 64; TT 547:5–19.)

2. On October 12, 2006, Rusch email Quiel and Kerr stating "I pay all the costs of incorporation, first year maintenance, etc. . . ." (Tr. Ex. 36.) Another email requests Quiel and Kerr to "wire in the corporate capital of $50,000 CHF . . . ." (Tr. Ex. 37.)

3. On October 23, 2006, Rusch emailed Quiel and Kerr "to wire the corporate capital of $100,000 CHF" and $500,000 USD to a Pictet account. (Tr. Ex. 39.) Quiel did not wire any money, nor did Quiel direct anyone to wire the funds on his behalf. (Doc. 137 at 73-74, 77; TT 556:21–557:25, 560:21–23.) Quiel never sent "any large deposits to UBS." (Doc. 137 at 140-141;TT 623:2–624:2.)

4. On October 24, 2006, Rusch emailed Quiel and Kerr: "The corporate accounts are open at UBS. Please wire $100,000 CHF in to each so that we can complete the incorporation." (Tr. Ex. 40.) Quiel did not "wire any money into Switzerland." (Doc. 137 at 79; TT 565:2–15.) Quiel never wired money to UBS. (Doc. 137 at 141; TT 624:6–15.)

5. Quiel emailed his passport to Rusch because it was "common practice" when making an investment. It was part of the "know your customer" rule. (Doc. 137 at 143-144; TT 626:10–627:5.)
6. While Quiel was in Switzerland, he did not review banking or brokerage accounts, (*Id.* at 92-93; TT 575:18–576:7), open any accounts, (*Id.* at 93, 149; TT 576:18–19, 632:15–25), or sign corporate documents, (*Id.* at 88; TT 571:5–17.)
7. The UBS account ending in -1090 received 100,000 Swiss francs from another bank account. The account also listed Quiel as the ultimate beneficial owner but did not list any of Quiel's children as required. (Doc. 136 at 92; TT 323:3–24, Tr. Ex. 57.)
8. The UBS account ending in -9372 opening deposit was 100,000 CHF. (Tr. Ex. 58.)
9. The UBS account ending in -2363 shows that the first deposit into the account was 750,000 Swiss francs from Cyril Capital, LLC. (Tr. Ex. 59.)
10. Antoine Salamolard, Pictet representative, testified that the "ultimate beneficial owner has absolutely no access to the account . . . and [Pictet has] no direct relationship with this person." (Doc. 135 at 217; TT 217:20–22.) While Quiel was "identified as the UBO, . . . a fiduciary intermediary could submit a copy of anyone's passport and open an account," including a juror's passport. (Doc. 136 at 41-42; TT 272:4–273:8.)

There is no evidence directly connecting Quiel to cash wires necessary to open the four Swiss accounts at issue, that a jury would have to accept. Quiel testified that he never sent Rusch any cash to begin a Swiss venture or open Swiss bank accounts, (Doc. 137 at 64, 74, 82, 140-141; TT 547:5–19, 557:7–25, 565:12–19, 623:20–624:2, 624:10–25), and believes he contributed stock to invest in Rusch's Swiss fund, not his own corporate

accounts. (*Id.*at 78, 141; TT 561:1–5, 624:22–25). Although not denied, Quiel did not admit that his investment/stock was deposited in the three UBS accounts and one Pictet account before the Court. The jury was not presented with testimony identifying in which accounts Quiel placed his stock.

Furthermore, representatives from UBS and Pictet stated that the external asset manager or financial intermediary listed Quiel as the ultimate beneficial owner, and the banks relied on the external asset manager or financial intermediary's identification of Quiel. (Doc. 136 at 32, 35, 58-60, 91-92; TT 263:9–13, 266:5–8, 289:25–291:16, 322:21–323:2.) Neither Pierre Gabris, Daniel Noser, nor Arno Arndt testified at trial. Quiel affirmatively denied that he was the beneficial owner of those accounts. (Doc. 137 at 158; TT 641:4–10, 16–22.)

Thus, this Court cannot conclude that the verdict is contrary to the clear weight of the evidence.

**III. Bill of Costs**

    **A. Legal Standard**

Federal Rule of Civil Procedure 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "By its terms, the rule creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." *Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000). Nevertheless, the Ninth Circuit has recognized appropriate reasons for denying costs: "(1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247–48 (9th Cir. 2014). The *Escriba* factors are "not 'an exhaustive list of 'good reasons' for declining to award costs' but rather a starting point for analysis." *Id.* at 1248 (quoting *Mexican-Am. Educators*, 231 F.3d at 593). "[A] losing party need not demonstrate that all five factors weigh against imposing costs" for the district court to properly deny costs to

the prevailing party. *Draper v. Rosario*, 836 F.3d 1072, 1087 (9th Cir. 2016).

### B. Analysis

Plaintiff admits that factors three, four, and five of the *Escriba* factors are neutral, (Doc. 149 at 6), and Defendant does not address the issue, (Doc. 148). Regarding factor one, "there is undoubtedly a strong public interest in favor of the United States's prompt collection of outstanding debts." *United States v. Kotzev*, No. 1:18-CV-1409, 2022 WL 706949, at *3 (E.D. Va. Mar. 9, 2022). Furthermore, this case presented difficult questions of fact, required close attention to detail, required the jury to make many credibility judgments, and created language barriers with international witnesses and bank documents written in a foreign language. "Surviving summary judgment, though not determinative, is also evidence of a close and difficult issue." *Fox v. Arizona*, No. CV-21-01089-PHX-MTL, 2024 WL 1344449, at *2 (D. Ariz. Mar. 28, 2024)

Therefore, in its discretion the Court finds that parties shall bear their own costs.

### CONCLUSION

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff's Renewed Motion for Judgment as a Matter of Law or, in the alternative, Request for New Trial (Doc. 140) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Review Clerk's Taxation of Costs (Doc. 145) is **granted**.

**IT IS FURTHER ORDERED** that the Bill of Costs (Doc. 132) be modified to show an award of $0.00 in costs against Plaintiff and for Defendant.

Dated this 23rd day of August, 2024.

_____
G. Murray Snow
Chief United States District Judge